**EDWARD LEVY METALS, INC.**

**v.**

**The UNITED STATES.**

**No. 35–72.**

United States Court of Claims.

Oct. 17, 1973.

Arthur L. Ballin, New Orleans, La., attorney of record, for plaintiff.

R. W. Koskinen, Washington, D. C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S CROSS-MOTION FOR JUDGMENT DISMISSING PLAINTIFF'S PETITION

PER CURIAM:

Plaintiff brought this suit to recover a bid deposit in the amount of $10,446.-34, which it claims the Government has wrongfully withheld as liquidated damages. The case is presently [1] before the court on plaintiff's motion for judgment

---

1. On November 17, 1972, this court, by order, denied the defendant's motion to dismiss. Although the defendant had argued that the plaintiff had failed to exhaust its administrative remedies, the court held that the Government's course of action constituted an effective waiver of the Government's contractual right to have the propriety of the default termination reviewed by the Board of Contract Appeals. Edward Levy Metals, Inc v. United States, 199 Ct.Cl. 1019 (1972).

on the pleadings. In its response to plaintiff's motion, the defendant moved for judgment dismissing plaintiff's petition. There is no genuine issue as to any material fact. We hold for the plaintiff for reasons hereinafter stated and therefore allow its motion for judgment on the pleadings.

Briefly stated, the facts are as follows. Plaintiff submitted bids for two traveling crane gantries, the original offer for each being $35,115.85. Together with its bid, plaintiff submitted a deposit in the sum of $15,000. When the bid was subsequently reduced by $9,000 per gantry, the 20 per cent bid price deposit was accordingly reduced to $10,446.34. Significantly, the contract provided that:

> NOTE: Purchaser shall provide all labor and equipment for dismantling and/or loading of property. Purchaser shall make necessary arrangements with the St. Louis-San Francisco Railroad for furnishing cars as needed to deliver and remove equipment required for dismantling and/or loading, and cars for delivery of purchased property. *Rail cars will be delivered to the point where Government rail joins Frisco tracks. Switching of cars between that point and the property location will be accomplished by Government owned locomotive* and will be limited to the period 8:30 AM to 11:30 AM and 1:00 PM to 3:00 PM with the exception that switching is not to interfere with production requirements of the operating contractor at Gateway Army Ammunition Plant. [Emphasis supplied.]

The Government has admitted that the turning radius of the Government tracks was so narrow that it could not accommodate the switching of rail cars loaded with the crane bridges and, further, that it was necessary to cut the crane bridges into sections in order to transport them over the Government rails.

The plaintiff advised the contracting officer that it was not a practical possibility to remove the gantry cranes. Plaintiff requested that the contract be cancelled and that its deposit be returned. The contracting officer refused to do this and, after the scheduled date of performance, issued a notice of default. More than a year later, in January, 1971, the cranes were readvertised and plaintiff was the successful bidder. Plaintiff was then awarded a second contract at a lower purchase price. With respect to the "switching" problem outlined in the NOTE clause, the only notable difference between the second offering and the first was the addition of the following sentence in the second offering:

> * * * It is recommended that each span be cut in half to facilitate removal.

The Government has focused its attention on plaintiff's alternative warranty argument. We are referred to the contract provisions set forth in the margin[2] and to the case of United

---

2. "1. INSPECTION. The bidder is invited, urged, and cautioned to inspect the property prior to submitting a bid. Property will be available for inspection at the places and times specified in the Invitation.

"2. CONDITION AND LOCATION OF PROPERTY. Unless otherwise specifically provided in the Invitation, all property listed therein is offered for sale 'as is' and 'where is'. If it is provided therein that the Government shall load, then 'where is' means f. o. b. conveyance at the point(s) specified in the Invitation. The description of the property is based on the best information available to the sales office. However, the Government makes no warranty, express or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or its fitness for any use or purpose. Unless otherwise specifically provided in the Invitation and except as provided in Conditions No. 9 and 11, no request for adjustment in price or for rescission of the sale will be considered. *This is not a sale by sample.* [Emphasis in original.]

* * * . * *

"7. DELIVERY, LOADING, AND REMOVAL OF PROPERTY.

"(a) Unless otherwise provided in the Invitation, the Purchaser shall be entitled to obtain the property upon full payment therefor, with delivery being made only from the

States v. Hathaway, 242 F.2d 897 (9th Cir. 1957), for the proposition that in an "as is, where is" sale, together with a disclaimer of warranty, the risk of removal is imposed on the buyer. In *Hathaway*, the contract involved the sale of steel lock gates which were located under the waters of the lake formed by a dam. Although plaintiff was able to remove two of the lock gates, the salvage operations could not be advanced beyond that stage. One of the lower remaining locks was sprung and this condition, taken together with the depth of the locks as well as accumulated debris, made it both economically unfeasible and dangerous for diving operations to be continued. Thus the project was terminated. Although the Ninth Circuit conceded that neither party was fully cognizant of the true condition of the two sets of locks which could not be removed, the court took special care to point out that

> . * * * One can hardly envisage contractual terms which could more clearly impose on the purchaser the risk of loss resulting from such contingencies as here occurred. This was the very essence of the bid invitation. The Government's manifested intention was *to shift the burden of responsibility for any fortuitous conditions which might arise* upon the bidder. There can be no other interpretation given the plain and unequivocal terms of the bid invitation. [242 F. 2d 900.] [Emphasis supplied.]

It is our view that the Government has aimed its argument wide of the mark. Whatever result would obtain under the contract provisions in the absence of the NOTE clause dealing with the "switching" of the railroad cars, there can be no doubt that the presence of the NOTE clause requires a conclusion in favor of the plaintiff. It is clear that the Government here, totally unlike the situation in *Hathaway*, made an affirmative promise; i.e., to switch railroad cars, loaded with dismantled crane bridges, over Government-owned property to a point where the Government rails join the St. Louis-San Francisco Railroad tracks. However, due to the construction of the switch tracks on Government property, there was no way in which the Government could accomplish its obligation without cutting the crane bridges. Thus, the Government failed to perform its promise that it would make available switch tracks and locomotives capable of delivering the dismantled crane bridges to the point where the Government rails join the Frisco tracks. No such affirmative promise was made by the Government in *Hathaway*, where the plaintiff clearly assumed the risk. Whatever the breadth of the disclaimer of warranty involved in the fact pattern

exact place where the property is located within the installation. The Purchaser must make all arrangements necessary for packing, removal, and transportation of property. The Government will not act as liaison in any fashion between the Purchaser and carrier, not will the Government recommend a specific common carrier. Loading will only be performed as set forth in the Invitation, * * *.

"(b) Where it is provided in the Invitation that the Government will not load or that the Purchaser will load, the Purchaser will make all arrangements and perform all work necessary to effect removal of the property. The Purchaser shall remove the property at his expense within the period of time allowed in the Invitation. * * *

* * * * *

"27. GUARANTEED DESCRIPTIONS. Except as provided in subparagraphs a and b of this clause, and notwithstanding any other terms and conditions of the Invitation for Bids to the contrary, the Government hereby warrants and guarantees that the property to be delivered to the Purchaser under any contract resulting from the Invitation for Bids will be as described. * * *

* * * * *

"b. THE GOVERNMENT DOES NOT WARRANT OR GUARANTEE ANY OF THE FOLLOWING:

"(2) Stated condition of the property, the total cost of the property, the estimated total weight, the estimated shipping dimensions, suggested uses of the property, and its fitness for any use or purpose are not guaranteed."

* * * * *

**606**

presented to us, it certainly does not go so far as to excuse the Government's failure to perform a distinct obligation which, by the contract, it had undertaken.

It is also clear that "dismantled" in the context of the contract must be interpreted as meaning "reduced to the component parts," and not "cut" or "broken." It is a basic tenet of contract interpretation that

> * * * the language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances. * * * [Kenneth Reed Construction Corp. v. United States, 475 F.2d 583, 586, 201 Ct.Cl. 282, 288, (1973).]

It is obvious to us that so costly a process as cutting and refabricating was not within the contemplation of the parties when it was agreed that the cranes would be "dismantled." We find additional confirmation in this view by two subsequent events: (1) the award of the contract at a later date for a substantially reduced price; and (2) the explicit reference in the second offering that

> * * * It is recommended that each span be cut in half to facilitate removal.

The only reasonable interpretation of the agreement is that the plaintiff was willing to pay the designated price provided that the traveling crane gantries, in a dismantled condition, would be switched by the Government to the point where Government rails join Frisco tracks. When a direct representation, such as this, is made to a prospective purchaser, the purchaser is entitled to act upon the assumption that the representation is one which is correct. Pikesville Home Builders, Inc. v. United States, 160 Ct.Cl. 541 (1963). In light of this holding, the Government, not able to perform to the extent required of it, could not withhold the deposit as liquidated damages.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted. Plaintiff is entitled to recovery of its bid deposit in the amount of $10,446.34 and judgment is entered to that effect. The defendant's motion for judgment dismissing plaintiff's petition is denied.